UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21192-CIV-GARBER

ST. PAUL MERCURY INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Hamilton Bank, N.A.,

    Defendant/Counter-Plaintiff.
_____/

ST. PAUL MERCURY INSURANCE
COMPANY,

    Third Party Plaintiff,

v.

RONALD LACAYO

    Third Party Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Defendant/Counter-Plaintiff Federal Deposit Insurance Corporation's ("FDIC") Federal Rule of Evidence 104(a) Motion [DE 207] to admit under the business records exception to the hearsay rule certain bank records compiled by a Salvadoran financial regulator. The Court has reviewed the FDIC's Memorandum of Law in Support of Its Motion [DE 208] and its corresponding sealed exhibits [DE 212], St. Paul Mercury Insurance

Company's ("St. Paul") Memorandum of Law in Opposition to FDIC's Motion [DE 213], and FDIC's Reply in Support of Its Motion [DE 223]. Finding the FDIC's Federal Rule of Evid 902(12) certification inadequate, the Court denies the FDIC's motion without prejudice, permitting the FDIC to submit a satisfactory certification.

I.     **Background**

In 2000, St. Paul issued Hamilton Bank an insurance bond that covered losses resulting from its employees' dishonest or fraudulent acts. (DE 205 at 2.) On January 11, 2002, the Office of the Comptroller of the Currency ("OCC") closed Hamilton, which the FDIC took over as receiver. (*Id.*) The FDIC seeks coverage under the bond for Hamilton's losses from a $15 million loan made to Golden Vision Financial Corp. in December 2000. (*Id.* at 3.) Ronald Lacayo, a Hamilton director, had approved the loan. (*Id.*)

The FDIC alleges that Hamilton's loss from the Golden Vision loan resulted from Lacayo's dishonest and fraudulent acts. Golden Vision allegedly transferred some of the loan proceeds from its account at Banco Cuscatlán in El Salvador to Lacayo's personal account at Hamilton, and to Baterias de El Salvador, a company in which Lacayo owned a large interest. (DE 208 at 2-3.)

If Lacayo received kickbacks from the loan proceeds, the FDIC might be eligible for coverage under the insurance bond. To prove that Lacayo received kickbacks, the FDIC wishes to admit into evidence the records of Golden Vision's Cuscatlán account ("Cuscatlán records"), and a report from El Salvador's financial regulator, the Superintendence of the Financial System ("SSF"), which summarizes the bank records' contents.

The FDIC's Exhibit 1 (DE 212) contains two letters from the OCC requesting the SSF to provide, among other things, the Cuscatlán records; the SSF's compilation of the Cuscatlán records; and charts summarizing those records.

Exhibit 2 (*id.*) is a May 22, 2003 letter from the then-Interim Superintendent of the SSF, Luis Armando Montenegro, to the OCC, in which Montenegro reported the SSF's findings ("Montenegro report").

Exhibit 3 (*id.*) is a June 25, 2009 declaration by the SSF's new Superintendent, Victor Antonio Ramirez Najarro, attempting to certify that the Cuscatlán records and the Montenegro report are authentic.

On the basis of his personal knowledge, Najarro stated that "[i]n its normal course of business" the SSF investigates bank transactions and responds to foreign banking regulators' requests for information by obtaining documents and writing analyses of transactions. (*Id.*, Ex. 3 ¶ 4.) Najarro further attested that the SSF obtained the requested Cuscatlán records "during its regular course of business." (*Id.* ¶ 6.) Montenegro, aware of the underlying information, had supervised the preparation of his letter "shortly after the SSF obtained the information contained therein." (*Id.*) Najarro then noted, "Salvadoran banking institutions usually maintain and depend on these documents in their normal course of business. Furthermore, the SSF routinely obtains and depends on these types of bank records in order to supervise Salvadoran banks or investigate banking transactions." (*Id.* ¶ 7.) Najarro ended by declaring, "[u]nder penalties set forth by Salvadoran laws," that his statements "are true and accurate." (*Id.* at 2.)

## II.     Discussion

First, the Cuscatlán records are inadmissible hearsay because Najarro's certification is inadequate. The Court nonetheless permits the FDIC to obtain a satisfactory certification. Second, the charts and the Montenegro report are inadmissible because they were not made "at or near the time" the matters in question occurred. Finally, the OCC letters are inadmissible because they are irrelevant to whether Lacayo received kickbacks.

### A. The Cuscatlán records are currently inadmissible hearsay.

The Cuscatlán records are currently inadmissible hearsay because Najarro's declaration does not satisfy the requirements of Federal Rule of Evidence 902(12), and thus the records do not qualify for the business records exception to the hearsay rule.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The business records exception to the hearsay rule permits the admission of a

> memorandum, report, record, or data compilation in any form, of acts, events, conditions, opinions, or diagnoses, [1] made at or near the time by, or from information transmitted by, a person with knowledge, [2] if kept in the course of a regularly conducted business activity, and [3] if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, [4] all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with . . . Rule 902(12) . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6). "The term 'business' . . . includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." *Id.*

Under Rule 902(12), a "custodian or other qualified person" must certify that the record

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
(B) was kept in the course of the regularly conducted activity; and
(C) was made by the regularly conducted activity as a regular practice.

Fed. R. Evid. 902(12). "The declaration must be signed in a manner that, if falsely made, would subject the maker to criminal penalty under the laws of the country where the declaration is signed." *Id.*

Najarro did not properly certify that the Cuscatlán records were made at or near the time that the transactions in question occurred. Although the Cuscatlán records are currently inadmissible, the Court permits the FDIC to obtain a valid certification, in the interest of reducing litigation

expenses. Najarro may still be a "qualified person," Fed. R. Evid. 902(12), because a court may admit into evidence records introduced through one who did not originate them. Also, the Cuscatlán records are currently inadmissible as self-authenticating commercial paper because they still do not satisfy the requirements of Rule 803(6).

### 1. Najarro did not certify that the Cuscatlán records were made at or near the time that the transactions in question occurred.

Under Rule 902(12), a qualified person must certify that the record meets the three requirements of Rule 803(6). But Najarro did not certify that the Cuscatlán records were made at or near the time that the matters in question–the Golden Vision transactions–occurred.

Najarro merely addressed whether the SSF compiled the records and made its report at or near the time of its investigation. But the FDIC offers the Cuscatlán records to prove that the Golden Vision transactions–not the SSF investigation–took place. Therefore, while a proper certification would also address how the SSF compiled the records to avoid possible double hearsay problems, Najarro additionally had to certify that Salvadoran banks make their records at or near the time that the transactions occur.

It does not suffice for Najarro to state that "Salvadoran banking institutions usually maintain and depend on these documents in their normal course of business." (DE 212, Ex. 3 ¶ 7.) This statement does not address when Salvadoran banks make or maintain the documents on which they depend. Nor does it matter that banks normally make or maintain records of transactions contemporaneously. Rule 902(12) unambiguously states that a qualified person must certify that the records meet each of the elements of Rule 803(6).

Contrary to St. Paul's argument (DE 213 at 12-13), a valid declaration does not require a verbatim recitation of the elements of Rule 803(6).[1] Najarro, or some other qualified person, must certify that the Cuscatlán records satisfy the elements of Rules 803(6) and 902(12), but the certification need not be a verbatim recitation of the elements.

### 2. **Najarro may still be a qualified person.**

Najarro may still be a qualified person because a court may admit into evidence records introduced through one that did not create them. St. Paul argues that Najarro is not qualified because there is no evidence that he had personal knowledge of Cuscatlán's record-keeping system. (DE 213 at 16-17.)

Nonetheless, a qualified person does not need to have made the records, or even know who made them, as long as he can "identify the record as authentic and specify that it was made and preserved in the regular course of business." *United States v. Jones*, 554 F.2d 251, 252 (5th Cir. 1977).[2] A qualified person need not even be an employee of the entity that originated the records, as long as he understands the system used to create them. *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387, 391 (Fed. Cir. 1997).

When a witness works for a proponent that did not originate the records, he only needs to show "that it was the business practice of the recording entity to obtain such information from

---

[1] St. Paul cites authorities that do not support its argument. For example, St. Paul cites 2 Kenneth S. Broun, *McCormick on Evidence*, § 229.1 (6th ed. 2006), which merely says that it is an "unanswered question . . . whether the written declaration must contain a factual showing or can simply recite conclusions"; read in context, the footnote means that in most cases a verbatim recitation suffices. *Id.* § 229.1 n.10. St. Paul also cites *Rambus, Inc. v. Infineon Techs. AG*, but *Rambus* stands for the opposite proposition. 348 F. Supp. 2d 698, 704 (E.D. Va. 2004) ("Infineon apparently considers that such a statement is largely insufficient because the declaration did not recite the exact language of Rule 902(11). There does not appear to be such a distinction in the case law.").

[2] Fifth Circuit precedents predating October 1, 1981 are binding on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

persons with personal knowledge and the business practice of the proponent to maintain the records produced by the recording entity." *United States v. Bueno-Sierra*, 99 F.3d 375, 379 (11th Cir. 1996). In *Bueno-Sierra*, the court affirmed the defendant's conviction on drug charges. *Id.* at 377. The evidence proving drug importation was a ship's berth request form, introduced through a port official rather than through the shipping company that prepared it. *Id.* at 378. The court held that the form was admissible because the port official properly testified that his office regularly maintains the berth requests, and that ships' agents personally prepare and regularly submit the berth requests. *Id.* at 379

If Najarro knows the procedures by which Salvadoran banks make and maintain records, he may be qualified. He does not even need to know specifically how Cuscatlán normally created records, only how Salvadoran banks normally operate–just as how in *Bueno-Sierra* the port official attested to knowledge of how ships' agents normally prepare berth request forms, but not to knowledge of how the particular shipping company prepared the particular form in question.

### 3. The Cuscatlán records are currently inadmissible as self-authenticating commercial paper.

The Cuscatlán records are currently inadmissible as self-authenticating commercial paper because, even though commercial paper is self-authenticating under Federal Rule of Evidence 902(9), it must still satisfy a hearsay exception to be admissible. 31 Wright & Gold, *Fed. Prac. & Proc. Evid.* § 7143 (1st ed. 2011) ("Even where the commercial law specifically states that a writing is admissible, this does not foreclose objections on grounds other than authentication, such as hearsay."); *see also United States v. Varner*, 13 F.3d 1503, 1510 n.14 (11th Cir. 1994) (assumption agreements authenticated under Rule 902(9) overcame hearsay objections through Rule 803(6)); *United States v. Hawkins*, 905 F.2d 1489, 1494 (11th Cir. 1990) (notations on checks satisfied Rules

902(9) and 803(6)).  Because the FDIC has not met the requirements of the business records exception, Rule 902(9) is of no avail.

      **B.**    <u>**The charts and the Montenegro report are inadmissible hearsay.**</u>

The charts and the Montenegro report are inadmissible because they were not made at or near the time the transactions in question occurred.  The Golden Vision transactions in question occurred in 2000 and 2001, but the charts and the Montenegro report date from 2003, when the SSF conducted its investigation.  The charts and report therefore do not satisfy the temporal requirement of Rule 803(6).

      **C.**    <u>**The OCC letters are inadmissible because they are irrelevant.**</u>

The OCC letters are inadmissible because they are irrelevant to whether Lacayo received kickbacks.  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  At most, the OCC letters only show the reason why the SSF conducted its investigation; they shed no light on the transactions themselves.  Therefore, they are inadmissible.  Fed. R. Evid. 402.

**III.**    <u>**Conclusion**</u>

Finding the FDIC's Rule 902(12) certification inadequate, the Court DENIES the FDIC's motion without prejudice, permitting the FDIC to submit a satisfactory certification on or before 30 days from the date of this order.  The Court DENIES the FDIC's motion as to the charts and Montenegro report because they were not made at or near the time the transactions in question occurred.  Finally, the Court DENIES the FDIC's motion as to the OCC letters because they are irrelevant.

DONE and ORDERED in Chambers at Miami, Florida this 10th day of June, 2011.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE