UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21192-CIV-GARBER

ST. PAUL MERCURY INSURANCE
COMPANY,

    Plaintiff/Counter-Defendant,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
Hamilton Bank, N.A.,

    Defendant/Counter-Plaintiff.
_____/

**ORDER**

THIS CAUSE is before the Court upon defendant/counter-plaintiff Federal Deposit Insurance Corporation's Renewed Federal Rule of Evidence 104(A) Motion. (DE 230.) In response, plaintiff/counter-defendant St. Paul Mercury Insurance Company filed a Memorandum of Law in Opposition to Defendant/Counter-Plaintiff Federal Deposit Insurance Corporation's Renewed Federal Rule of Evidence 104(A) Motion. (DE 232.)[1] The Court has also received the FDIC's Reply in Support of Its Renewed Federal Rule of Evidence 104(A) Motion. (DE 240).[2] Having carefully considered the FDIC's motion, St. Paul's response, and the FDIC's reply, as well as the presentations

---

[1] Five days after filing its response, St. Paul filed a Motion for Leave to File a Corrected Memorandum of Law in Opposition to Defendant/Counter-Plaintiff Federal Deposit Insurance Corporation's Renewed Federal Rule of Evidence 104(A) Motion. (DE 235.) The Court granted that motion only to the extent that St. Paul sought to correct a statement regarding the timing of its receipt of various documents from the FDIC. (DE 239.) In all other respects, the Court denied the motion. (*Id*.)

[2] In addition to its response and motion for leave to file a corrected response, St. Paul also filed, moments before the hearing on the matter commenced, two notices, one of which included over 200 pages of exhibits. These submissions are untimely and will not be considered by the Court in ruling on the FDIC's motion.

of the parties at the hearing held before the Court on August 22, 2011, the Court hereby GRANTS the FDIC's motion.

I.       **Background**

In order to establish St. Paul's liability to the FDIC, as receiver for Hamilton Bank, for losses incurred allegedly as a result of a bank director's dishonest and fraudulent acts, the FDIC is seeking to admit various documents into evidence. According to the FDIC, those documents would show that the bank director, Ronald Lacayo, received a financial benefit as a result of his fraudulent acts thus helping the FDIC satisfy one of the conditions of the insurance bond issued by St. Paul to Hamilton Bank.

The documents that the FDIC seeks to have admitted are comprised of bank records from a bank in El Salvador, Banco Cuscatlán. Those records purportedly show the transfer of funds from Golden Vision Financial Corp., an entity to which Hamilton Bank had loaned $15 million in December 2000, to Lacayo, who had been involved in approving the loan. Some of the funds were allegedly transferred to Lacayo's personal account at Hamilton as well as to Baterias de El Salvador, a company owned in part by Lacayo or his family members.

The FDIC's initial attempt to have the bank records admitted into evidence, under the business records exception to the rule against hearsay, Fed. R. Evid. 803(6), failed because the Court found the FDIC's foreign record certification, Fed. R. Evid. 902(12), to be inadequate. In the interest of judicial economy, the Court afforded the FDIC another opportunity to obtain a proper certification, which it has now done. The Court finds that this certification, provided by Victor Antonio Ramirez Najarro, who is the superintendent and president of the board of directors of the Salvadoran banking regulator, the Superintendence of the Financial System of El Salvador ("SSF"), satisfies the requirements of Federal Rules of Evidence 803(6) and 902(12).

II.  **Discussion**

The issues before the Court are whether the banking records under consideration are admissible as records of regularly conducted activity under Rule 803(6), the business records exception to the rule against hearsay, and whether the records are self-authenticating under Rule 902(12), based on Najarro's declaration.

In order to qualify for the business records exception, the records must have been:

- **(1)** created at or near the time of the events or acts that the records purport to show;
- **(2)** created by, or from information transmitted by, a person with knowledge of the events or acts;
- **(3)** kept in the course of a regularly conducted business activity; and
- **(4)** made as a regular practice of that business activity.

Fed. R. Evid. 803(6). Further, **(5)** all of the above must be shown by, in this case, a certification that complies with Federal Rule of Evidence 902(12). *Id*. And finally, **(6)** the source of information or the method or circumstances of preparation of the records must not indicate a lack of trustworthiness. *Id*.

In order to satisfy the self-authentication requirements of Federal Rule of Evidence 902(12), "Certified Foreign Records of Regularly Conducted Activity," the record's "custodian or other qualified person" must certify in a written declaration that the record, consistent with Rule 803(6), was:

- **(1)** created at or near the time of the occurrence of the matters set forth in the record;
- **(2)** created by, or from information transmitted by, a person with knowledge of those matters;
- **(3)** kept in the course of the regularly conducted activity; and
- **(4)** made by the regularly conducted activity as a regular practice.

Fed. R. Evid. 902(12). "The declaration must be signed in a manner that, if falsely made, would subject the maker to criminal penalty under the laws of the country where the declaration is signed." *Id.*

A. **The FDIC Has Satisfied the Certification Requirements of Rules 803(6) and 902(12)**

The FDIC has submitted two declarations of the superintendent of the Salvadoran banking regulator, Victor Antonio Ramirez Najarro which, together, satisfy the certification requirements of Rules 803(6) and 902(12).

First, Najarro's declaration sets forth, to the Court's satisfaction that the banking records at issue are of a type that were: **(1)** created at or near the time of the transactions that are reflected in the documents (Supp. Decl., DE 230, Exh. A, ¶ 7); **(2)** made based on information transmitted by people with knowledge of those transactions (*id*.); **(3)** kept in the course of the regularly conducted activity of Salvadoran banking institutions (Decl., DE 212-4, ¶ 7; Supp. Decl., DE 230, Exh. A, ¶ 6); and **(4)** made by the regularly conducted activity of Salvadoran banking institutions as a regular practice (Supp. Decl., DE 230, Exh. A, ¶ 6).

Second, the Court finds that Najarro satisfies Rule 902(12)'s requirement that the declarant be either the custodian of the records or an otherwise "qualified person." Najarro has been the superintendent and president of the board of directors of the SSF since June 1, 2009. (Decl., DE 212-4, ¶ 1; Supp. Decl., DE 230, Exh. A, ¶ 1.) The SSF oversees and regulates El Salvador's financial system. ((Decl., DE 212-4, ¶ 2; Supp. Decl., DE 230, Exh. A, ¶ 8.) Under Salvadoran law, banking institutions, such as Banco Cuscatlán, are required to provide data and information regarding their operations and activities when requested by the SSF. (Decl., DE 212-4, ¶ 3; Supp. Decl., DE 230, Exh. A, ¶ 8.) Based on these criteria, the Court has determined that Najarro's position and experience demonstrate that he has sufficient familiarity with these types of records such that he is qualified to attest to the reliability of the records at issue here.

St. Paul argues that Najarro's knowledge of and declarations regarding Banco Cuscatlán's record-making and -keeping procedures are far too removed and generalized to satisfy the requirements of 803(6) and 902(12). According to St. Paul, Najarro isn't a "qualified person" under the rule because: (a) he doesn't know the specific procedures by which Banco Cuscatlán made or kept its records; (b) he hasn't identified who at Banco Cuscatlán prepared the records; (c) he wasn't employed by the SSF at the time the records were created; and (d) he was never employed by Banco Cuscatlán. Such particularity or first-hand knowledge, however, is not required under Eleventh Circuit case law. *See, e.g., Allen v. Safeco Ins.*, 782 F.2d 1517 (11th Cir. 1986) (holding that lab results from a local agency were properly admitted based on the testimony of a state fire marshal who stated generally that the local agency regularly analyzed samples sent from his office); *U.S. v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984) (holding that a customs certificate from the United Kingdom was properly admitted based on the testimony of a vice president of a liquor company who had neither prepared the document nor had first-hand knowledge of its preparation); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) (holding that a witness attesting to the authenticity of certain records "need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records"). As other courts have done, this Court broadly and liberally interprets the term "qualified witness" as "requiring only someone who understands the system used." *U.S. v. Franco*, 874 F.2d 1136, 1139 (7th Cir. 1989); *see also Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1132 (8th Cir. 1994) (quoting 4 Weinstein's *Evidence* § 803(6), p. 803-178 (1993): "phrase 'other qualified witness' should be given the broadest interpretation"). That is, it is sufficient if the witness has "knowledge of the procedure governing the creation and maintenance of the <u>type</u> of records sought to be admitted." *Franco*, 874 F.2d at 1139 (emphasis added).

In support of its argument, St. Paul cites, somewhat misleadingly,[3] a number cases in which courts found that records were properly admitted where a witness had specific or first-hand knowledge of both the methods and the individuals who were involved in creating and maintaining the records. However, while such specific and first-hand knowledge might be sufficient to establish the elements listed in Rule 803(6), such particularity is by no means necessary, as the cited case law in the previous paragraph demonstrates. Likewise, St. Paul cites a case in which a witness's lack of personal knowledge was one of many factors that the court considered in finding certain documents inadmissible under the business record exception. While this indicates personal knowledge may certainly be a factor in a court's analysis of the issue, it does not follow that a lack of personal knowledge will necessarily thwart admissibility. In short, the cases cited to by St. Paul are unavailing.

B.     **Satisfaction of the Business Records Exception to the Rule Against Hearsay**

Based on Najarro's certification and the Court's examination of the banking records here at issue, the Court concludes that the records satisfy the requirements of the business records exception to the rule against hearsay and shall therefore be admitted into evidence. That is, **(1)** the records at issue all appear, to the Court's satisfaction, to have been made contemporaneously with the events and transactions that are reflected therein. The Court finds nothing in the record to controvert

---

[3]As an example, the Court is concerned about St. Paul's paranthetical in its citing to *Equity Lifestyle Props. v. Fla. Mowing and Landscape Serv.*, 556 F.3d 1232, 1243 (11th Cir. 2009). St. Paul describes the court in that case as "finding the predicate requirements of Rule 803(6) met only through testimony that detailed the daily and nightly procedure of how the records were made and kept and who did so." (Response, DE 232, 8)(emphasis added). The Court will assume that the word "only" was added inadvertently, since the court in that case never expressed that such testimony was a necessary condition to admissibility, as St. Paul appears to want this Court to believe. The Court cautions counsel regarding similar mischaracterizations of any case law it cites to in future filings.

Najarro's assertion that **(2)** the records were created by, or from information provided by, people with knowledge of the events or acts that are described in the records. There is additionally no dispute that **(3)** the records have been kept and relied on in the course of the bank's regularly conducted banking activities. Furthermore, St. Paul does not contest that **(4)** it was the regular practice of the bank to make and rely on these records. And the aforementioned was all **(5)** properly certified in compliance with Rule 902(12), as detailed by the Court in the previous section. Lastly, the Court concludes that **(6)** the source of information or the method or circumstances of preparation of the records do not indicate a lack of trustworthiness.

One of St. Paul's main arguments against the records' admissibility centers on the issue of trustworthiness. St. Paul's contentions in this regard, however, are unconvincing. Generally, the Court finds that "bank records are particularly suitable for admission under Rule 803(6) in light of the fastidious nature of record keeping in financial institutions, which is often required by governmental regulations." *U.S. v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992). It is against this backdrop that the Court considers St. Paul's argument and finds that there is no genuine dispute as to the authenticity and trustworthiness of the records. Although St. Paul complains that the records were collected from Banco Cuscatlán in anticipation of litigation, St. Paul never argues that the records were actually created in anticipation of litigation. Moreover, there is an added indicum of reliability in that, according to Najarro's certification, the SSF "relied on" the records, and "routinely obtains and relies upon these types of banking records in carrying out the SSF's business of supervising Salvadoran banks or investigating banking transactions." (Decl., DE 230, Exh. A, ¶¶ 4, 8.) In other words, there does not appear to be any real dispute that the records were actually created contemporaneously with the events that they record; that the records were created by, or from

information provided by, people with knowledge of the events recorded; and that the records were made and kept in the ordinary and regular course of the bank's business.

St. Paul also argues that it will be subject to unfair prejudice if the records are admitted. While St. Paul may indeed be subject to prejudice upon the Court's admission of the records, the Court finds nothing unfair about this prejudice. St. Paul was first provided with these records in January 2005. St. Paul complains that "[a]t some point prior" to July 27, 2010, the original banking records were destroyed, but does not specify when the destruction occurred. (Response, DE 232, 5.) While St. Paul bemoans the fact that, at the time that the FDIC first learned about the documents, in 2003, St. Paul "had no reason nor ability to verify the accuracy or completeness of the documents in question, to question the individuals involved in preparing or collecting the documents, or to request additional, related documents in order to substantiate or challenge the FDIC's claim," St. Paul, however, doesn't explain why it didn't try to take any of those actions when it learned of the documents in 2005–almost seven years ago. (*Id*. at 5-6.) In other words, St. Paul has failed to show that any of the hurdles that it now faces are not the result of its own inaction.

Furthermore, even if St. Paul could show that it was not at fault for its current predicament, St. Paul's argument that it might be able to challenge the records if it had access to other, hypothetical account information or records that it complains are missing, is too speculative to support a claim of unfair prejudice anyway. St. Paul refers to "possible transfers into the Golden Vision account to offset the alleged transfers from Golden Vision's account for the benefit of Baterias or Mr. Lacayo." (*Id*. at 6.) The Court is not persuaded that St. Paul's theory about a conjectural explanation for the transfers should result in a finding of inadmissibility.

Lastly, St. Paul complains that some of the records at issue are illegible and that others may not be accurate. It also complains that the records submitted are not complete. These issues, however, go to the records' weight, and not their admissibility.

C. **The Duplicates that the FDIC Has Submitted Are Admissible**

Because the Court finds that no genuine question has been raised regarding the authenticity of the original documents, and because the Court finds that it would not be unfair to admit the duplicates instead of the originals, Federal Rule of Evidence 1003 is not a bar to the admissibility of the records.

D. **Other Notations on the Records**

The Court's ruling applies only to the bank records themselves and does not include any of the handwritten notations thereon, other than signatures, or any of the stamps or other markings that may have been added by the SSF or the FDIC.

II. **Conclusion**

Accordingly, and upon due consideration, it is hereby ORDERED that:

The FDIC's Renewed Federal Rule of Evidence 104(A) Motion (DE 230) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida this 13th day of September, 2011.

*/s/ Barry L. Garber*
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE